**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Guernsey,<br><br>  Plaintiff,<br><br>v.<br><br>Elko Wire Rope Incorporated, et al.,<br><br>  Defendants. | No. CV-21-00848-PHX-DJH<br><br>**ORDER** |

Defendants Elko Wire Rope Inc. ("Elko Wire Rope"), Elko Wire Rope of Arizona ("Elko Arizona") (together "Elko"), and Neely Hammond ("Hammond") (collectively "Defendants") seek summary judgment on Plaintiff Jeremy Guernsey's ("Guernsey") wrongful termination claim. (Doc. 74). The issue has been fully briefed. (Docs. 77; 79).[1] The Court will grant the Motion.

**I.     Background**[2]

Elko manufactures, supplies, and repairs industrial rigging products and machinery for mines in the southwestern part of the United States. (Doc. 1–3 at ¶ 6). At the relevant times, Hammond served as Elko's Vice President.

On December 4, 2019, Elko hired Guernsey to be a full-time field service manager.

---

[1] After briefing concluded, Plaintiff filed a "Citation of Supplemental Authority in Support of Plaintiff's Response to Defendants' Motion for Partial Summary Judgment" (Doc. 81), in which she attaches a May 22, 2023, decision from the California Supreme Court. The persuasive authority, which addresses California statutes not at issue in this matter, does not change the Court's conclusions herein.

[2] Unless otherwise noted, the facts stated herein are taken from Plaintiff's Complaint (Doc.1-3) and assumed to be true and undisputed.

(*Id.* at ¶ 13(A)–(D); *id.* at 18).  Under the terms of his contract offer, Elko was to pay Guernsey $125,000 per year plus commissions, which were to be calculated from a specified payout structure detailed in the offer letter. (*Id*. at ¶ 13(A)–(D)).

By all accounts, Guernsey was timely paid his salary during his time with Elko. But on or about September 16, 2020, Guernsey began to inquire about the promised commissions. (Doc. 1-3 ¶ 4). On September 22, 2020, Hammond told Guernsey that $3,900.00 would be added to his paycheck for a job that was completed in June. (*Id.* ¶ 16). Guernsey replied with thanks and asked about the other missing job commissions. (*Id.*) It is unclear what communications took place after this query. But it is uncontested that on or around September 29, 2020, Elko terminated Guernsey's employment. (Doc. 1–3 at ¶ 17).

Guernsey subsequently filed a Complaint in Maricopa Superior Court of Arizona, alleging state law claims of wrongful termination, unpaid wages, and conversion. (*Id.*) Defendants timely removed the matter pursuant to this Court's diversity jurisdiction. (Doc. 1). They now seek partial judgment in their favor on Guernsey's wrongful termination claim, which is brought under Arizona's Employment Protection Act ("AEPA").

**II.    Standards**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The moving party may discharge this burden by showing there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party opposing a motion for summary judgment cannot rest upon his mere allegation or denials of his pleadings, but

must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The parties do not present any factual disputes for the Court; instead, they argue over the legal significance of undisputed facts, and namely, whether Guernsey's AEPA retaliation claim, as alleged, is precluded under Arizona law.

**III.  Discussion**

Guernsey's AEPA retaliation claim alleges that Elko and Hammond fired him to avoid paying him his earned commissions and in retaliation for "asserting his legal right to be paid. . . as required under Arizona law, A.R.S. § 23-350 et seq. and A.R.S. § 23-355 in particular [Arizona's Fair Wages Act]. . ." (Doc. 1-3 ¶¶ 21, 23). In their Motion for Partial Summary Judgment, Defendants argue that the AEPA bars Guernsey's retaliation claim because Arizona's Fair Wage Act, on which Plaintiff's retaliation claim is based, provides the exclusive remedy for such a violation. (Doc. 74 at 2–4).

The Arizona legislature passed the AEPA in 1996, and in doing so, "limited plaintiffs to three avenues of relief for claims asserted against employers on the theory of wrongful discharge." *Cronin v. Sheldon*, 991 P.2d 231, 235 (Ariz. 1999); *see also Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 850 n. 7 (Ariz. App. 1997), *review dismissed,* 955 P.2d 534 (Ariz. 1998) (by enacting the AEPA, the legislature "defin[ed] the public policy of this state and limit[ed] the situations in which an employee may bring a wrongful termination suit"). The statute permits wrongful termination claims when (1) a discharge is in violation of an employment contract; (2) a discharge violates an Arizona statute; or (3) a discharge is in retaliation for the employee's assertion of certain rights protected by state law. *Id.* Guernsey's claim relies on the third theory of relief—specifically, retaliation for his assertion of rights protected by Arizona's Fair Wages Act.

Section 23-1501(A)(3)(c)(ii) details the circumstances in which an employee may bring a retaliation claim. In relevant part, it provides that:

>    3.    An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have

- 3 -

>    occurred:
>    . . .
>    (c)  The employer has terminated the employment relationship of an employee in retaliation for [. . .]:
>    . . .
>    >    (ii)  The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state. . .

A.R.S. § 23-1501(A)(3)(c)(ii). Following A.R.S. § 23-1501(A)(3)(c), section 23-1501(B) states that "[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute." A.R.S. § 23-1501(B).

As noted, the "source" statute of Plaintiff's AEPA retaliation claim is Arizona's Fair Wages Act. (Doc. 1-3 ¶¶ 21–23). Arizona law makes it unlawful for an employer to retaliate or discriminate against an employee who has exercised their right to inform any person of his potential rights under the Fair Wages Act. A.R.S. § 23-374(B). By way of remedies, the Fair Wages Act provides that "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." A.R.S. § 23-355(A). Defendants argue that because the Fair Wages Act specifies the remedies for a violation of that statute ("an amount that is treble the amount of the unpaid wages"), section 23-1501(B) of the AEPA renders the wage statute remedies the exclusive remedies available to Plaintiff and precludes him from bringing his wrongful termination claim under section 23-1501(A)(3)(c)(ii).

Guernsey does not dispute that the plain language of the Fair Wages Act provides remedies in the form of treble damages for employees complaining of their failure to get paid. *See* A.R.S. § 23-355(A). Nor does he dispute that he bases his AEPA retaliation

- 4 -

claim on the fact that Defendants fired him when he asserted his rights to his commissions under the wage statute. (Doc. 1-3 ¶¶ 21–23). He nonetheless asserts that his retaliation claim is not limited by section 23-1501(B). Ignoring the statutory language altogether, Plaintiff says an AEPA claim in Arizona "establishes a cause of action for an employee who is <u>terminated</u> [A.R.S. 23-1501(A)(3)(c)(ii)] irrespective of any wage claim they may have when fired." (Doc. 77 at 4). He says his separate unpaid wages claim "has nothing to do with any termination of employment but is instead purely a statutory contract claim for unpaid wages unrelated to whether the plaintiff is a current or former employee." (*Id.*) He argues that his wrongful termination claim seeks "only lost future **wages after the termination**, while [his Fair Wages Act claim] seeks only lost **wages earned prior to termination**." (*Id.*)

The problem with Guernsey's arguments is that Arizona's statutes do not recognize the distinctions he aims to draw.[3] The plain language of the statute shows that Guernsey's AEPA retaliation claim is precluded because it is based on a violation of the Fair Wages Act, which contains its own remedies for a violation thereof. *See State v. Derello*, 18 P.3d 1234, 1238 (Ariz. App. 2001) (stating that if the language of a statute "is plain and unambiguous, [the court] must follow the text as written."); *Hayes v. Continental Ins. Co.*, 872 P.2d 668, 672 (Ariz. 1994) (holding that where the language of a statute is "clear and unambiguous," Arizona courts apply the plain meaning "without resorting to other methods of statutory interpretation"). For the same reason, other courts in this district have reached this conclusion when plaintiffs base section 23-1501(A)(c)(ii) retaliation claims on reports of wage violations. *See e.g.*, *Ferren v. Westmed Inc.*, 2021 WL 2012654, *3 (D. Ariz. May 20, 2021) (dismissing plaintiff's claim of retaliatory discharge based on reported wage violations protected by the Fair Wages Act because the wage law provided exclusive remedies); *Kuramoto v. Heart and Vascular Center of Arizona, PC*, 2021 WL 2012668, *6 (D. Ariz. May 20, 2021) (granting summary judgment on plaintiff's AEPA claim in favor

---

[3] "Although one might question the wisdom of some of the legislative determinations that underlie the EPA, we cannot second-guess or overturn what appear to be clear, deliberate legislative choices." *Taylor v. Graham Cnty. Chamber of Commerce*, 33 P.3d 518, 525 (Ariz. 2001).

of employer because "[u]nder the terms of the AEPA, this means that Plaintiff has been granted no statutory right to pursue an action for remedies other than those provided by the Fair Wages Act"); *Reel Precision, Inc. v. FedEx Ground Package Sys. Inc.*, 2016 WL 4194533, at * 5 (D. Ariz. Aug. 8, 2016) (granting motion to dismiss AEPA retaliation claim based on unpaid wage violation because pursuant to § 23-1501(B) "the remedy for failure to pay wages is 'treble the amount of the unpaid wages'").[4]

The two contrary district court decisions identified by Plaintiff do not persuade the Court that the AEPA should be construed otherwise. In *Medina v. Chas Roberts Air Conditioning, Inc.*, the court rejected the employer's argument that the plaintiff's section 23–1501(A)(3)(c)(ii) retaliation claim was barred by the Arizona Supreme Court's decision in *Taylor v. Graham Cty. Chamber of Commerce*, 33 P.3d 518, 522 (Ariz. 2001). 2006 WL 2091665, *3 (D. Ariz. July 24, 2006). In *Taylor*, the Arizona Supreme Court concluded that the "'residual provision' in the last sentence of subparagraph (3)(b)," precludes a plaintiff from raising a wrongful discharge claim under section 23-1501(A)(3)(b) if the statute that was allegedly violated provides a remedy for the violation. *Taylor*, 33 P.3d at 522 (finding plaintiff's wrongful discharge claim based on employer's alleged violation of the Arizona Civil Rights Act ("ACRA") was precluded because ACRA already provided a remedy for its violation). But the district court in *Medina* found *Taylor* "inapposite" to the facts before it because *Taylor* only addressed "claims under A.R.S. § 23–1501[A](3)(b); it d[id] not refer to claims brought under A.R.S. § 23–1501[A](3)(c)(ii)." *Id.* In so finding, however, Judge McNamee did not specifically address whether § 23-1501(B) limited § 23-1501(A)(3)(c)(ii) retaliation claims that were based on Fair Wage Act violations, which is the issue here.

That ambiguity is not present in *Secord v. Mareto, Inc.*, however, the second case

---

[4] Plaintiff also argues that because the wage statute is not among the statutes that are listed under § 23-1501(A)(3)(b), the Arizona legislature did not intend for the remedies allowed for in the Fair Wage Act to be the exclusive remedies available for an employee bringing a retaliation claim based on unpaid wages. (Doc. 77 at 3). But Plaintiff does not bring his EPA claim under § 23-1501(A)(3)(b) and even if he did, the list of statutes with remedial provisions noted therein is not an exclusive. *See* § 23-1501(A)(3)(b) (stating that Arizona statutes that provide exclusive remedies "includ[e] the following. . .").

- 6 -

cited by Plaintiff. There, Chief Judge Snow, albeit in a footnote, declined to follow *Reel Precision* and dismiss an AEPA claim premised on a wage violation, stating that "[u]nder a plain reading of [A.R.S. § 23-1501(B)], that section does not modify § 23-1501[A](3)(c)(ii), and the Court cannot find any authority from this court, the Arizona state courts, or the state legislature (other than *Reel Precision*), that indicates otherwise." 2020 WL 1033165 n.2 (D. Ariz. Mar. 3, 2020).[5]

This court respectfully disagrees with the conclusion that the plain language of section 23-1501(B) does not modify and limit claims that are brought under section 23-1501(A)(3)(c)(ii). In no uncertain terms, section 23-1501(B) states that "[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute." A.R.S. § 23-1501(B). That this language is not *in* subsection (A)(3)(c) does not mean that it does not logically modify subsection (A)(3)(c), which substantively circumscribes the types of wrongful termination claims for retaliation that can be brought in Arizona. Statutory construction is by necessity a holistic endeavor. In this case, to ignore the exclusive remedy language in section 23-1501(B) and allow an AEPA retaliation claim premised on the Fair Wages Act to proceed would be contrary to the legislative intent behind the statute. AEPA was intended to "circumscribe, not broaden, wrongful termination claims based on alleged violations of public policy." *Taylor*, 33 P.3d at 525. *See also Zamora v. Reinstein*, 915 P.2d 1227, 1230 (Ariz. 1996) (in construing a statute, a court's goal is "to fulfill the intent of the legislature that wrote it") (cleaned up). Ignoring section 23-1501(B) would also be contrary to fundamental principles of statutory construction, which require a court to give "effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (cleaned up). If section 23-1501(B) does not modify the previous section then section 23-1501(B) would be superfluous and have no obvious effect on *any* section of the statute. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (in light of court's duty

---

[5] Judge Snow nonetheless granted the employer summary judgment on Plaintiff's AEPA retaliation claim on different grounds. *Id.*

to give meaning, where possible, to every word of a statute, courts should be "reluctant to treat statutory terms as surplusage").  For these reasons, the Court declines to follow *Medina* or *Secord*, and finds Plaintiff's AEPA claim, as alleged, is barred by A.R.S. § 23-1501(B).

### III.     Conclusion

Because AEPA's exclusive-remedies provision, A.R.S. § 23-1501(B), bars AEPA claims premised on Arizona's Fair Wage Act violations, Plaintiff has no statutory right to pursue an action for remedies for this violation other than those provided by the Fair Wages Act.  The Court will therefore grant Defendants' Motion for Partial Summary Judgment on this claim.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 74) on Plaintiff's Arizona Employment Protection Act wrongful termination claim (Count One) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 16 at 6–7) regarding notice of readiness for pretrial conference.

**IT IS FINALLY ORDERED** that the parties shall indicate when assistance from the Court is needed in seeking settlement of the case.  Upon a joint request by the parties, the Court will refer the matter for a settlement conference before a Magistrate Judge.

Dated this 21st day of August, 2023.

Honorable Diane J. Humetewa
United States District Judge